15838

LOVE v. LOVE *ET AL.*

(38 S. E. (2d), 231)

*Messrs. Charles B. Elliott,* of Columbia, *J. Means Mc-Fadden,* of Chester, and *R. B. Hildebrand* and *John M. Spratt,* both of York, for appellant,

*Messrs. J. M. Wise* and *Charles W. McTeer,* both of Chester, for respondent,

May 14, 1946.

MR. ASSOCIATE JUSTICE FISHBURNE delivered the unanimous Opinion of the Court.

This appeal requires a construction of the will of William M. Love, late of the county of Chester, and the codicil thereto. The case was tried in the circuit court on the pleadings and on an agreed statement of facts.

William M. Love, the testator, died on or about March 13, 1926. He left of force a will dated March 6. 1916, and a codicil thereto executed ten years later, on January 18, 1926.

At the time of the execution of the will, the wife of the testator, Mamie E. Love, ·was living, but before the execution of the codicil she had died. When the will was made, in 1916, the testator had two children: his sons, Samuel Glenn Love, the appellant here, and Robert C. Love, Sr.; and two grandchildren: William C. Love, the respondent, and Robert C. Love, Jr., these two grandsons being the children of Robert C. Love, Sr. The sons and gransons were living at the time of the execution of the codicil, in 1926, and survived the testator. When the will was executed, and later the codicil, the sons of the testator were married. Samuel Glenn Love has never had children. One of the grandsons above mentioned, Robert C. Love, Jr., died intestate; Robert C. Love, Sr., died August 19, 1943.

The will, omitting formal parts, is as follows:

"Sec. 1st. I will and bequeath and devise my house and lot on Pinckney Street in which I now live, together with all household and kitchen furniture, to my beloved wife,

Mamie E. Love, during her lifetime, and at her death, I will and devise this house and lot and all household and kitchen furniture to my children, Robert Carter Love and Samuel Glenn Love, or their bodily heirs.

"Sec. 2nd. I will bequeath and devise that ten thousand ($10,000.00) dollars from my estate be invested in good sound securities and that the interest therefrom go to my wife, Mamie E. Love, and at her death I will, bequeath and devise that the principal and any accrued interest that there may be, be equally divided between my children, Robert Carter Love and Samuel Glenn Love, or their bodily heirs.

"Sec. 3rd. I will and bequeath and devise all my medical books, instruments and office furniture to my son, Samuel Glenn Love, all other tools together with book case I will, bequeath and devise to my son, Robert Carter Love.

"Sec. 4th. I will, bequeath and devise that the balance of my entire estate, consisting of real estate, bond stocks, mill stocks, fire insurance, stocks, notes, mortgages, accounts and all other credits that I may die possessed of, be equally divided between my children, Robert Carter Love and Samuel Glenn Love, or their bodily heirs.

"Sec. 5th. I hereby execute and appoint my son, Robert Carter Love Executor of my estate, and it is my wish and desire that he be allowed to serve without bond."

The property involved in this appeal includes the house and lot in the city of Chester, on Pinckney Street, a farm of two hundred seventy-one and 35/100 acres, more or less, with improvements thereon; and personal property, passing under the residuary clause, with an appraised value of approximately eighty thousand dollars, in all of which the appellant claims an absolute one-half interest.

The first question presented by the appeal has to do with the house and lot in the city of Chester which was disposed of under Section 1 of the will. The codicil, which will later be referred to, cancelled the life estate given to the wife of the testator in this section, she having died between the dates of the execution of the two instruments. In construing this

provision, the language to be considered then is, "to my children, Robert Carter Love and Samuel Glenn Love, or their bodily heirs."

The circuit judge struck from the clause the word "or" and inserted in place of it the word "and", thereby making the devise read: "to my children, Robert Carter Love and Samuel Glenn Love, and their bodily heirs." As reconstructed, it was then adjudged that Robert Carter Love, Sr., and Samuel Glenn Love acquired a fee-simple conditional rather than fee-simple estate.

The contention of the appellant, Samuel Glenn Love, is the words, "or their bodily heirs", are words of substitution; that the intention of the testator, as clearly expressed in this clause, was that his children, Robert C. Love, Sr., and Samuel Glenn Love, should take a fee-simple title if they survived the testator; and that in case neither of them survived the testator the "bodily heirs" of the one so dying, should take under the will by substitution; that both sons having survived the testator, they acquired a fee-simple title in equal shares; in other words, that alternative interests were created.

The court held, in accordance with the contention of the respondent, that the word "or" was not used in its disjunctive sense, but should be construed as having been used conjunctively as "and". It was also held that the substitution of "and" for "or" carried into effect the intention of the testator, an intention which is apparent from a reading of the will.

While it is true that the courts have not hesitated to construe "or" as "and" when necessary to effectuate the testator's intention (*Albergotti v. Summers,* 205 S. C., 179, 31 S. E. (2d), 129, and cases cited therein; also see *Wood v. Wood,* 132 S. C., 120, 128 S. E., 837), we do not think that in this case such a construction is authorized.

There is nothing in the devise which calls for the application of artificial rules in order to discover the testator's intention. In grammatical construction, the devise is clearly

and correctly expressed; it is so definite in its terms that only one meaning can reasonably be derived from it. The devise points unmistakably to an alternative gift and with equal certainty to the intended alternate beneficiaries. Nor does a contrary intention appear from an examination of the other sections of the will. It is clear that the testator was undertaking to provide for the contingency which would arise should one or both of his sons predecease him. Inasmuch as the two sons survived the testator, no such contingency arose.

In *Heyward v. Heyward's, Ex'rs.,* 28 S. C. Eq., 102, 7 Rich. Eq., 289, the court had under construction a similar clause: "Provided that N do pay unto my brother T or his heirs the sum of Five Thousand pounds  *  *  *  ." It was there held that the word "or" should be construed in its primary, natural and disjunctive sense, the court saying:

"The usual and natural construction of the word *or* is disjunctive (f) : and we are to construe the words of every testator in their ordinary and natural sense, unless there is something in the context to impose a different meaning on them, or, unless there is something in the nature of the interest created, taken in connection with the operation of the other parts of the will, which would defeat the clear legal intention, were the usual interpretation given."

To the same effect is *Anderson v. Smoot,* 17 S. C. Eq., 131, Speers Eq., 312, and *Simpson v. Cherry,* 34 S. C., 68, 12 S. E., 886.

In construing a will, the rule requires that it be read in the ordinary and grammatical sense of the words employed, unless some obvious absurdity or some repugnancy or inconsistency with the declared intention of the testator, as abstracted from the whole will, should follow from so reading it. Following this course a construction may be adopted avoiding its consequences.

But we see nothing in the context of the will here not in harmony with the construction we have given it. The two sons of the testator at the time of his death were his only

heirs, and evidently were the primary objects of the testator's bounty. Having survived him, they took under Section 1 of the will a fee-simple title to the Pinckney Street property, in equal shares.

We next consider the issue arising under Section 4 of the will, which reads as follows:

"I will, bequeath and devise that the balance of my entire estate, consisting of real estate, bond stocks, mill stocks, fire insurance, stocks, notes, mortgages, accounts and all other credits that I may die possessed of, be equally divided between my children, Robert Carter Love and Samuel Glenn Love, or their bodily heirs."

The property left in this section, after the execution of the codicil, constituted the entire personal estate of the testator, which, as hereinabove stated, was appraised at approximately Eighty Thousand Dollars. The alternative provision, "or their bodily heirs," appearing in this section of the will, is identical with the one we have just considered, appearing in Item One.

The appellant contends that the plain meaning of this section is that the two children of the testator, Robert C. Love, Sr., and Samuel Glenn Love, having survived the testator, acquired absolute title in equal shares; that the provision, "or their bodily heirs", is plainly substitutional, and that the "bodily heirs" under the circumstances acquired nothing. It is argued that the words, "or their bodily heirs", found in Section 1 and in Section 4 of the will, should be given the same construction.

Item 4 of the will, which is a general residuary clause, expressly provides in specific language, that the property therein devised "be equally divided between my children, Robert Carter Love and Samuel Glenn Love, or their bodily heirs."

In construing this section, the lower court held that the testator intended to provide for his two grandsons, and to make them the immediate objects of his bounty. And it was decreed that by this section he devised and bequeathed unto

Robert C. Love, Sr., and Samuel Glenn Love *and their children* vested interests in the properties enumerated in Section 4; that Robert C. Love, Jr., and the respondent, William C. Love, sons of Robert C. Love, Sr., each took an undivided one-fourth vested interest therein.

In order to effect this supposed intention of the testator, the court substituted in place of "or their bodily heirs", the words "and their children". This cannot soundly be done, for the same reasons advanced by us in construing Item One of the will.

The devise in Sections 1, 2, and 4 of the will carried the same words of substitution: "or their bodily heirs". But in Sections 2 and 3 of the codicil, the testator devised two tracts of land in fee to his two sons, Robert C. Love, Sr., and Samuel Glenn Love, without any superadded words. From this the court drew the conclusion that the testator intended to make some distinction in the quality of the devise made in Section 4 of the will, which made applicable the construction that he intended to include grandsons in the gift.

In Section 1 of the will, the testator clearly intended to prevent a lapse in the event either or both of his sons should not be living at his death; and obviously he had the right to foreclose any question as to what should happen to the share given to either one of his children if that child should predecease him. And this is equally true with reference to Section 4. *Bender v. Bender,* 226 Pa., 607, 75 Atl., 859, 134 A. S. R., 1088.

"Where an estate is once given by words of clear and ascertained legal significance, it will neither be enlarged nor cut down by superadded words in the same or subsequent clauses of the will, unless they raise an irresistible inference that such was the intention of the testator." *Lawrence v. Burnett,* 109 S. C., 416, 96 S. E., 144; *Werber v. Moses,* 108 S. E., 396, 117 S. C., 157.

It is argued by respondent that it was no part of testator's purpose to provide against the lapse of the devise to

Robert C. Love, Sr., and Samuel Glenn Love, because it was wholly unnecessary to do so, since under Section 8926 of the Code, there could have been no lapse. Whether a lapse could or could not have occurred is of no consequence, so far as enabling us to understand what was in the testator's mind when he wrote his will is concerned. The argument assumes that the testator had the Act in mind when he made the will, and knew that it prevented lapsing. We think on the face of it that this would be a violent assumption. No one can reasonably say whether he had any knowledge at all of the Code section in question.

It is important to keep in mind that the devise in Item 4 of the will was not to the two named sons "and their children". The clause used, "or their bodily heirs", plainly created an alternative interest. Robert C. Love, Sr. and Samuel Glenn Love, having survived the testator, acquired absolute title in equal shares under this section.

The final issue to be considered is whether or not Section 4 of the codicil violates the rule against perpetuities. Section 4 of the codicil, with numerals added, reads as follows:

"To my sons, Robert C. Love and Samuel Glenn Love, I give, devise and bequeath the tract of land near McConnellsville (describing land); (1) This tract of land is given to my sons equally to be owned, held, and used by them jointly and equally during the lives of the two. (2) Upon the death of either one of my two sons, it is my will and desire and I so direct that the surviving son and the bodily heirs, if any, of the one so dying shall own and hold said tract of land during the life of the surviving son, (3) and upon the death of the surviving son the children of either of my two sons shall own and hold said tract of land during the period of their natural lives, such bodily heirs owning and holding the part owned and held by such child or children's father; (4) and upon the death of any of the said children of my sons, the interest of such child so dying shall go to the survivors of said children, (5) and upon the death of

the last of the survivors of the children of my two sons said plantation shall revert to my estate, and then be disposed of as property not specifically devised by me. (6) If my son first dying leave bodily heirs, then his bodily heirs shall take and hold the part of the son dying, (7) but if he dies without bodily heirs, the surviving son shall take and hold his part so long as he lives, (8) and then upon his death such part shall pass to his bodily heirs subject to the above final disposition. (9) If there are no bodily heirs of either son living at the death of my last surviving son the plantation shall then revert to my estate and be disposed of as property not specifically devised by me as hereinabove provided.

"(10) Should either of my sons leave two or more bodily heirs surviving him and upon the death of one of such bodily heirs, the interest of such grandchild so dying shall pass to his surviving brother or sister, (11) and if no surviving brother or sister, first to my surviving son, if living, and if not living then to any bodily heir or heirs left surviving him.

"(12) It is my will and desire that said plantation shall be the property of my two sons and their bodily heirs as long as one of them remains alive."

Sections 5 and 6 read:

"Fifth—5. All the rest and residue of my estate both real, personal and mixed not otherwise specifically disposed of I wish to be divided equally between my two sons, Robert C. Love and Samuel Glenn Love, division to be made as soon as practical.

"Sixth—6. My will to which this codicil is attached is ratified and confirmed except insofar as it may conflict with this codicil. I ratify and confirm the appointment of Robert C. Love as sole executor of this my last will and testament and codicil thereto."

The circuit court held that Section 4 of the codicil devised to Robert C. Love, Sr. and Samuel Glenn Love and their children life estates in the property described therein,

with the remainder to the heirs of William M. Love, such heirs to be determined at the death of the last surviving son or grandchild of William M. Love. It is clear that this remainder is contingent and not vested.

Our attention is directed by appellant to the ulterior provision in Clause 5, Section 4 of the codicil, which it is claimed, violates the rule against perpetuities. This provision reads, "upon the death of the last of the survivors of the children of my two sons said plantation shall revert to my estate, and then be disposed of as property not specifically devised by me". Appellant's contention is that the remainder is null and void, in that it attempts to suspend the power of alienation and the vesting of the title in the devisees without any attempt to base the suspension and vesting upon a life or lives in being, and twenty-one years thereafter from the date of the death of the testator.

The rule against perpetuities may thus be stated:

No interest subject to a condition precedent is good unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest. No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest. Gray, The Rule against Perpetuities, Sec. 201. If provisions of a testamentary character are such that, under them, a violation of the rule against perpetuities may possibly happen, then the devise of interest dependent upon such provisions is void. *Woodruff Oil & Fertilizer Co. v. Yarborough's Estate,* 144 S. C., 18, 142 S. E., 50.

"It is not enough that a contingent event may happen, or even that it will probably happen, within the limits of the Rule against Perpetuities; if it can possibly happen beyond those limits, an interest conditioned on it is too remote." Gray's Perpetuities, 4th Ed., Sec. 214.

"* * * In other words, for the purpose of determining questions of remoteness, men and women are deemed capable of having issue as long as they live. * * *" Gray's Perpetuities, 4th Ed., Sec. 215.

. The testator, as before mentioned, had two sons living— the appellant, Samuel Glenn Love, and Robert C. Love, Sr.—at the time of the making of his will and codicil, and at the time of his death. Robert C. Love, Sr., had two sons living at the time of the execution of the will and codicil, and at the time of testator's death. The appellant, Samuel Glenn Love, has never had children. As pointed out by appellant, however, nothing occurring subsequent to the death of the testator has any bearing upon the problem of the application of the rule against perpetuities.

"* * * If an interest is not good at its creation no subsequent accident or occurrence can make it so; the validity of a limitation is accordingly to be determined under the circumstances then existing, and the certainty that it will vest within the permitted period, if at all, must be discernible at that date." 48 C. J., Sec. 10 (2d), Page 943.

We think it clear, in applying the foregoing principles to the facts before us, that in Clause 5 of Section 4 of the Codicil, a grandchild of the testator might have been born after the death of the testator, and might have lived more than twenty-one years after the death of that grandchild's father. Considering the question from the date of the death of the testator, then if that grandchild were the surviving grandchild, the testator would then be attempting to vest this "ulterior" provision in his heirs determined as of the death of the last surviving grandchild. This would be in plain contravention of the rule because the remainder to such heirs is contingent. *Woodruff Oil and Fertilizer Co. v. Yarborough's Estate,* 144 S. C., 18, 142 S. E., 50; *Buck v. Tolar,* 146 S. C., 294, 144 S. E., 1. Nor do we think, as urged by respondent, that the case of *Pippin v. Sams,* 174 S. C., 444, 177 S. E., 659, is contrary to our conclusion. It was held in that case that the rule against perpetuities did not apply, because the class closed at the death of the testator, and only the two named grandchildren living at that time could take.

The point involved is well stated in 41 Am. Jur., Perpetuities, Sec. 54, Page 98:

"A devise of a future interest to take effect on the death of the children of a living person violates the rule against perpetuities, since it is possible that such living person may survive the testator and may subsequently have children not in being at the time of his death, and that such unborn children may live more than twenty-one years. Thus, a gift to a remainder contingent on surviving the termination of life estates given to unborn children violates the rule against perpetuities. A common instance falling within this class of cases is that of a devise over on the death of the testator's grandchildren. Such grandchildren may be born after the testator's death and may live for more than twenty-one years. * * *"

Appellant argues that not only does Clause 5 of Section 4 of the codicil run counter to the rule against perpetuities, but that the entire section is void. Hence, title in fee vested in the two sons, Samuel Glenn Love and Robert C. Love, Sr., upon the testator's death under Section 5 of the codicil. It is contended that the several life estates provided for in the clauses preceding Clause 5, are void and are used to fill in the gap between the death of the testator and the time when his ultimate beneficiaries are to be ascertained and take their estates; that the creation of those life estates was plainly intended to form a part of an illegal scheme of distribution which the rule against perpetuities condemns.

The general rule is that when there are two provisions in a will, primary and ulterior, and the provisions are separable—one provision not dependent upon the other—the primary provision, if it does not offend against the rule itself, will be held to be good, even if the ulterior provision is held void as offending against the rule.

The applicable principle is stated in *Woodruff Oil & Fertilizer Co. v. Yarborough's Estate,* 144 S. C., 18, 142 S. E., 50, in these words:

"In cases of this kind, where the ulterior provision is void for remoteness, the primary provision may or may not be so related thereto that it must fall with the fall of the ulterior

provision. If the two be so interwoven with, so interdependent upon, each other that they together constitute one scheme and cannot be separated, then if the ulterior provision be void the primary provision must also fall. But if they may be separated, if the existence of the ulterior provision is not necessary to the existence of the primary provision, if the primary provision subserves a purpose of its own, which it could and would serve if the ulterior provision had not been made, and not created merely to support the ulterior provision, then, if the ulterior provision be void, the primary provision is good and should be sustained unless it itself offends against the rule."

The general doctrine expressed in Gray, The Rule Against Perpetuities, is quoted with approval in *Buck v. Tolar,* 146 S. C., 294, 144 S. E., 1:

" 'Sec. 247. If future interests in any instrument are avoided by the rule against perpetuities, the prior interests become what they would have been had the limitation of the future estates been omitted from the instrument.

" 'Sec. 248. If the devise of a future interest is void for remoteness, but the prior devise is for life only, or other limited period, * * * the property, after the termination of the prior interest, goes to the person to whom property which has been invalidly devised or bequeathed goes. This person is generally the heir in case of realty, and the residuary legatee in case of personalty. There is no difference in this respect between a devise or bequest void for remoteness and a devise or bequest void for any other reason." To the same effect see *Woodruff Oil & Fertilizer Co. v. Yarborough's Estate,* 144 S. C., 18, 142 S. E., 50.

In the case of *Buck v. Tolar,* 146 S. C., 294, 144 S. E., 1, it is pointed out that there are two exceptions to the general rule outlined above: First, if striking out a part of the provisions and leaving the rest should work an unjust distribution of the estate, the whole must fail. The second is that if the invalid part of the will is an essential part of a general scheme, the valid antecedent estate or estates fall with the

remainder. In our opinion, a careful examination of Section 4 of the codicil discloses that neither of these exceptions can reasonably apply here.

In *Woodruff Oil & Fertilizer Co. v. Yarborough's Estate,* 144 S. C., 18, 142 S. E., 50, it is said:

"* * * To hold that a trust for a term of years, though in itself vested and not offending against the rule, must fail merely because a limitation over, upon its expiration, is void would be to lay down a doctrine at once dangerous and far reaching in its consequences; a doctrine that would nullify a valid trust merely because the instrument creating the trust contained a void provision for the disposition of the *corpus* after the expiration of the trust term * * *"

And in the same case, commenting upon the fact that it appeared that the testator meant to dispose of all of his property and die intestate as to none, the court continued:

"* * * That of itself does not indicate that the two provisions are parts of a single plan or scheme inseparable and wholly interdependent. The two provisions may be separated as easily and readily as if the first had been for life and the latter by way of remainder. This court has repeatedly held that a gift over, which is void, cannot defeat a vested interest previously given."

In this case, the life estates devised in Clauses 1, 2, and 3 of Item 4 of the codicil subserve a purpose of their own which they could and would serve if the void limitation over had not been made. The effect is just the same as if the testator had created the life estates and made no mention of the remainder. Nor do we think that such life estates were created solely to support the ulterior provision.

The limitation over being void, the question arises, what becomes of the property, or the legal title thereto? It will be recalled that under this clause of the codicil, the testator dealt with a plantation containing Two Hundred Seventy-One and 35/100 acres, more or less.

The same question arose in *Woodruff Oil & Fertilizer Co. v. Yarborough's Estate, supra,* where the limitation

over of the *corpus* was held void as violating the rule against perpetuities. In that case the will contained no residuary clause, and the court held that the title in fee to the lands there involved passed by the statute of distributions as in-testate property to the heirs-at-law of the testator upon his death, burdened with the prior estate, which was a trust term of tewnty-one years.

In *Buck v. Tolar, supra,* the will under construction con-tained a residuary clause. In construing the will, the entire devise in question was held void under the rule against per-petuities, and it was adjudged that the property involved passed under the residuary clause. The same legal result follows here: the title to the property vested in fee in the two sons of the testator, Samuel Glenn Love and Robert C. Love, upon the death of the testator under the residuary clause of the codicil, but subject to the valid prior life estates.

If the will had contained no residuary clause, we would have the same result. In such case, Samuel Glenn Love and Robert C. Love, being the sole heirs-at-law of their father, William M. Love, would have taken title to the property in fee in equal shares under the statute of distributions, at the death of the testator, subject to the prior life estates, as in *Woodruff Oil & Fertilizer Co. v. Yarborough's Estate, supra.*

Judgment reversed.

MESSRS. ASSOCIATE JUSTICES STUKES, TAYLOR and OX-NER and MR. ACTING ASSOCIATE JUSTICE E. H. HENDER-SON concur.