**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Barry Clarke, Respondent/Appellant,

v.

Fine Housing, Inc. and RRJR, L.L.C., Defendants,

Of which Fine Housing, Inc. is the Appellant/Respondent.

Appellate Case No. 2017-002285

———————

Appeal From Charleston County
J. C. Nicholson, Jr., Circuit Court Judge

———————

Opinion No. 2020-UP-238
Submitted May 1, 2020 – Filed August 12, 2020

———————

**REVERSED**

———————

W. Cliff Moore, III, and Kirby D. Shealy, III, both of Adams and Reese, LLP, of Columbia, for Appellant/Respondent.

Ashley G. Andrews, of Lafonde Law Group, P.A., of Charleston, and Thomas R. Goldstein, of Belk, Cobb, Infinger & Goldstein, P.A., of North Charleston, for Respondent/Appellant.

**PER CURIAM:** Fine Housing, Inc., appeals from the trial court's order finding a right of first refusal (Right of First Refusal) to be enforceable against it and requiring it to deliver title to a property (Property) to Barry Clarke upon his payment of $350,000. Fine Housing argues the trial court erred in (1) finding Clarke had an enforceable Right of First Refusal, (2) not finding Clarke waived the right to enforce the Right of First Refusal, (3) not finding Clarke is barred by the doctrine of laches; (4) not finding Clarke is equitably estopped from asserting the Right of First Refusal, and (5) calculating the price at which to exercise the Right of First Refusal. Clarke cross appeals, arguing the trial court erred in (1) setting the acquisition price of the Property at $350,000 when Fine Housing paid $150,000 for the Property, and (2) not allowing him to introduce cancelled checks related to Fine Housing's payments to itself and others. We reverse.

**FACTS**

Clarke filed an action to enforce the Right of First Refusal to purchase Property located in Charleston, South Carolina. Clarke asserted that, as successor to Group Investment Company, Inc. and RRJR, LLC, Fine Housing had refused to allow Clarke to acquire the Property in conformity with a lease (Lease). Clarke's complaint asked only for specific performance of a provision in the Lease for the Property and relief from the owner of the Property, Fine Housing, and Fine Housing's grantor, RRJR.[1] Fine Housing answered, asserting, among other defenses, that Clarke (1) waived the ability to enforce the Right of First Refusal; (2) was estopped from exercising the Right of First Refusal; and (3) was barred by the doctrine of laches from enforcing the Right of First Refusal.[2] Both parties moved for summary judgment, and the court denied both motions.

After a non-jury trial, the trial court held the Right of First Refusal was enforceable and ordered Fine Housing to deliver title of the Property to Clarke upon his payment of $350,000. Fine Housing filed a motion to alter or amend, which was denied by the trial court. Fine Housing appeals, and Clarke cross-appeals.

---

[1] Group Investment deeded the Property to RRJR for $5. John and Robin Robinson were shareholders of Group Investment and members of RRJR. John Robinson died in 2008, and in December 2013, Robin Robinson transferred the Property, along with her home, to Fine Housing. RRJR defaulted and is not a party to this appeal.

[2] At trial, Fine Housing abandoned the other defenses.

**STANDARD OF REVIEW**

An action for specific performance of a real estate contract is in equity. *Ingram v. Kasey's Assocs.*, 340 S.C. 98, 105, 531 S.E.2d 287, 290 (2000). "In an appeal from an action in equity tried by a judge, appellate courts may find facts in accordance with their own views of the preponderance of the evidence." *Wachovia Bank, Nat. Ass'n. v. Blackburn*, 407 S.C. 321, 328, 755 S.E.2d 437, 441 (2014) (citing *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976)). "However, this [c]ourt is not required to disregard the findings of the trial judge who saw and heard the witnesses and was in a better position to judge their credibility." *Ingram*, 340 S.C. at 105, 531 S.E.2d at 291.

**LAW/ANALYSIS**

**A.      Fine Housing's Appeal**

Fine Housing argues the trial court erred in enforcing the Right of First Refusal. We agree.

A right of first refusal is a pre-emptive right. *Webb v. Reames*, 326 S.C. 444, 446, 485 S.E.2d 384, 385 (Ct. App. 1997). A right of first refusal "is a contingent, nonvested interest in that the grantee . . . might never choose to sell the property." *Id.* It is an interest predicated on an event that is not certain to occur. *Id.* Pre-emptive rights are subject to the rule against restraint of alienation of interest in land. 61 Am. Jur. 2d *Perpetuities and Restraints on Alienation* § 110 (2002).

Under some circumstances, a right of first refusal may not be an unreasonable restriction on alienation. *Id.* A right of first refusal is not a restraint on alienation as long as both the price the designated person must pay and the time allowed for the exercise of the right of first refusal are reasonable. *Id.* When assessing the reasonableness of a restraint on alienation in the form of a right of first refusal, consideration should be given to several factors, including: "(1) the purpose or purposes for which the restraint is imposed; (2) the duration of the restraint; and (3) the method of determining the price to be paid." *See* 61 Am. Jur. 2d *Perpetuities, Etc.* § 109 (2002). "Whether a right of first refusal is valid depends on the legitimacy of the purpose, the price at which the holder may purchase the land, and the procedures for exercising the right." Restatement (Third) of Property (Servitudes) § 3.4 cmt. f (2000).

The Lease, dated January 8, 1999, provided Clarke the use of one-half of the parking spaces on the Property. The description of the Property attached to the Lease references a plat recorded in the Office of the Register of Deeds for Charleston County; however, Clarke does not claim he leased the other one-half of the parking spaces or the buildings located on the Property. The Lease for the Property provides in article V, section 5.2, "Right of First Refusal: [Group Investment] grants [Clarke] the right of first refusal should it wish to sell."

The trial court first found Clarke had an enforceable Right of First Refusal of which Fine Housing had record notice. The court wrote, "Every purchaser or mortgagee is regarded as having notice of documents properly recorded. Any properly recorded interest is valid as to subsequent purchasers without notice." The court noted Fine Housing did not contest the applicability of the recording statute or dispute that the parties' lease, containing the contested right of first refusal, was on file in the Office of the Register of Deeds for Charleston County and constituted notice to Fine Housing of its existence. The court also noted Fine Housing's closing attorney, William Sloan, was candid about missing the recorded Lease due to the time constraints on the quick transaction.

The trial court then addressed Fine Housing's argument that the Right of First Refusal was invalid for vagueness. The court noted a right of first refusal is the opposite of a restraint on alienation because nothing in the Lease prevents the owner from selling and it guarantees the seller will always have at least two bidders for his property in the event he wishes to sell. As to the time for performance, the court stated every contract in South Carolina contains within it implied terms of good faith and reasonableness. Further, as for the price, the trial court was "persuaded not only by the [L]ease itself, but also by the testimony of [Clarke] that the price is controlled by the property owner and set by the owner's acceptance of any price from any purchaser whose offer is acceptable to the owner, after which the plaintiff, as the holder of the right, can either match the price or waive the right to exercise it." Therefore, the trial court held the Right of First Refusal was definite, and the intention of the parties was clear and unmistakable. *See Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC.*, 374 S.C. 483, 499, 649 S.E.2d 494, 502 (Ct. App. 2007) ("Where an agreement is clear and capable of legal interpretation, the court's only function is to interpret its lawful meaning, discover the intention of the parties as found within the agreement, and give effect to it.") (quoting *Heins v. Heins*, 344 S.C. 146, 158, 543 S.E.2d 224, 230 (Ct. App. 2001)).

Fine Housing argues the trial court erred in finding the Right of First Refusal to be enforceable because it does not (1) specify the property encumbered by the right, (2) describe the method for determining the price at which the right can be exercised, or (3) provide procedures for exercising the right. Therefore, Fine Housing argues the Right of First Refusal in the Lease lacks the specificity required to be an enforceable interest in real estate. While it is recorded, it asserts the Lease does not contain the necessary details for notice and understanding by a third party of the operation of the Right of First Refusal and the nature and extent of Clarke's interest. Thus, the Right of First Refusal is unenforceable because it constituted an unreasonable restraint on alienation that violates the public policy of the State of South Carolina.

As to the specificity of property encumbered, the language in the Lease does not specifically state whether the Right of First Refusal encumbers the entire tract or just the leased parking spaces. Fine Housing argues the Lease solely provides for Clarke's lease of parking spaces on the Property. Clarke asserts he has a Right of First Refusal on the entire tract, including improvements on the Property.

As to the method for determining the price, Fine Housing asserts the Right of First Refusal pursued by Clarke is not only uncertain on the issue of price, it is completely devoid of any language addressing price. Clarke claimed he was entitled to exercise the Right of First Refusal by paying Fine Housing one dollar more than Fine Housing paid RRJR for the Property. No evidence was offered at trial as to what Group Investment intended for determining the price, and Clarke's attempts to testify about his understanding of what John Robinson intended were denied by the trial court under the Dead Man's Statute. *See* S.C. Code Ann. § 19-11-20 (2014).

As to the procedures for exercising the Right of First Refusal, Fine Housing argues the Lease has no provision that identifies when or how Clarke should be notified of events that would trigger the Right of First Refusal and, once triggered, the time period during which Clarke must respond and how he must respond. Clarke argues the Right of First Refusal was not triggered by the transfer to RRJR; whereas, Fine Housing asserts the Lease does not state whether the Right of First Refusal is or is not triggered by a transfer of the Property from one entity to another entity if the entities share common ownership. Fine Housing asserts Clarke waited until April 13, 2015, more than a year after he learned of the transfer to Fine Housing on March 21, 2014, to formally invoke the Right of First Refusal.

Based on our review of the evidence, we find the Lease did not specifically set forth whether the Right of First Refusal applied to the leased parking spaces or the entire property; the Lease did not specify how the price of the Property would be determined for the Right of First Refusal; and the Lease did not state a time for exercising the Right of First Refusal. Further, John Robinson was unavailable to testify as to his intent of the Right of First Refusal, and Robin Robinson defaulted and was not a party to the action. We, therefore, find the lack of specificity in the language of the Right of First Refusal creates an unreasonable restraint on alienation. Thus, the trial court erred in determining the Right of First Refusal was enforceable.

Fine Housing also argues the trial court erred in (1) not finding Clarke waived the right to enforce the Right of First Refusal; (2) not finding Clarke's attempt to exercise the Right of First Refusal is barred by the doctrine of laches; (3) not finding Clarke is equitably estopped from asserting the Right of First Refusal; and (4) calculating the price at which to exercise the Right of First Refusal. We need not address these issues because our determination that Clarke's Right of First Refusal was not enforceable is dispositive of the appeal. *See Hagood v. Sommerville*, 362 S.C. 191, 199, 607 S.E.2d 707, 711 (2005) (declining to address an issue when the resolution of a prior issue is dispositive); *Whiteside v. Cherokee Cnty. Sch. Dist. No. One*, 311 S.C. 335, 340-41, 428 S.E.2d 886, 889 (1993) (holding the appellate court need not address remaining issues when the resolution of a prior issue is dispositive).

**B.    Clarke's Appeal**

Clarke argues the trial court erred in (1) setting the acquisition price of the property at $350,000 when Fine Housing paid $150,000 for the property; and (2) not allowing him to introduce cancelled checks related to Fine Housing's payments to itself and others.

We need not address these issues because our determination that Clarke's Right of First Refusal was not enforceable is dispositive of the appeal. *See Hagood*, 362 S.C. at 199, 607 S.E.2d at 711 (declining to address an issue when the resolution of a prior issue is dispositive); *Whiteside*, 311 S.C. at 340-41, 428 S.E.2d at 889 (holding the appellate court need not address remaining issues when the resolution of a prior issue is dispositive).

**CONCLUSION**

Accordingly, the decision of the trial court is

**REVERSED.**

**HUFF, THOMAS, and MCDONALD, JJ., concur.**[3]

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.